FILED ___
LOGED ___
RECEIVED ___
E-MAIL

AUG 26 2021

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HAYTHEM CHIHI, an individual,<br><br>Plaintiff,<br><br>v.<br><br>FACEBOOK INC, a corporate company,<br><br>Defendant. | Case No. 21-CV-1163 RSL<br><br>**COMPLAINT**<br>**JURY DEMAND** |

Plaintiff Haythem Chihi ("Chihi" or "Plaintiff") alleges for his Complaint against Defendant Facebook Inc, ("Defendant"), on personal knowledge as to his own activities and on information and belief as to the activities of others, as follows:

## PRELIMINARY STATEMENT

1. This is an action for reverse domain name hijacking under 15 U.S.C. § 1114(2)(D)(v) and a declaratory judgment under 28 U.S.C. § 2201 that Chihi's registration and use of the internet domain names fbdown.store, fbdown.website, fbdown.cc, fbdown.today, fbdown.company, fbdown.biz, fbdown.com, fbdown.net, fbdown.download, fbdown.tech, fbdown.ws, facebookvideoz.com, fbdown.pro, fbdown.asia, fbdown.tips, fbdown.work, fbdown.center, fbdown.news, fbdown.space, fbdown.mobi, fbdown.solutions, fbdown.ltd, fbdown.guru, fbdown.org (the "Domain Names") does not violate Defendant's rights under the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), or otherwise under the Lanham Act, 15 U.S.C. § 1051 et seq.

2.	The Domain Names have been suspended by registrar GoDaddy, Inc. and are at immediate risk of being transferred away from Plaintiff by the actions of Defendant, which claims trademark rights to the Domain Names.

## PARTIES

3.	Plaintiff Haythem Chihi is an individual residing in Tunis, Tunisia.

4.	Defendant Facebook Inc is a corporate company established in California, United States of America. Upon information and belief, the address for service of the Defendant is 1601 Willow Road, Menlo Park, California 94025, United States of America.

## JURISDICTION AND VENUE

5.	This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because the causes of action arise under federal law, specifically reverse domain-name hijacking under 15 U.S.C. § 1114(2)(D)(v) and a declaratory judgment under 28 U.S.C. § 2201.

6.	This Court has personal jurisdiction over Facebook Inc because it consented to jurisdiction in this court by filing a complaint with the World Intellectual Property Organization (WIPO), which contains consent to jurisdiction of the district in which the domain name registrar's primary offices are located. The domain name registrar for the Domain Names is GoDaddy, Inc. And upon information and belief, GoDaddy, Inc. is located within this district in Washington.

7.	This Court is the proper venue because GoDaddy, Inc. has its primary office in Washington and, under 28 U.S.C. § 1391(b)(1) and (c), because Defendant Facebook is deemed a resident of this district for venue purposes, as well as under subsection (b)(2)

because a substantial part of the events giving rise to the claims alleged in this Complaint occurred in this judicial district.

## FACTUAL BACKGROUND

8. This case involves "reverse domain name hijacking," which occurs when an individual or an entity alleges that it is the owner of a trademark and asserts spurious claims of trademark infringement or trademark dilution against the owner of a domain name that is allegedly similar or identical to the registered trademark.

9. Plaintiff is a Good-faith Registrant of the Domain Names that incorporates a generic word "fb" which is in wide use.

10. Abbreviation "fb" is a generic term which has many different meanings, including, but not limited to, Followed By, First Base, Foreign Body, FullBack, Frame Buffer, Forward Backward, Front Back, First Best, Front to Back, Flash Back, Friendship Book, Funny Bunny, Flat Back. There are approximately 160 definitions for "fb" in internet.

11. The Plaintiff's website fbdown.net is a Social Media Website and is not associated with Facebook Inc or the Facebook brand. FBDOWN is a free to use social media service website, that is operated by a small team. The Plaintiff does not attempt to be a commercial entity or assign otherwise to a brand; The Domain Names are an information and resource website which works with news publishers to deliver high quality news and information.

12. The Plaintiff did not register the Domain Names primarily for the purpose of preventing "the owner of the trademark or service mark from reflecting the mark in a

corresponding domain name," because the Plaintiff believed that the word "fb" is generic and no one has exclusive right to use this word. The Plaintiff did not intend to create a likelihood of confusion or disrupt Defendant's business.

13. The Plaintiff's website has the disclaimer eliminated any possibility that the Plaintiff was attempting to infer an affiliation with the Defendant and its mark. The disclaimer on the Plaintiff's website states "FBDOWN is a Social Media Services website and is not associated by any means to Facebook or the Facebook brand and doesn't have anything to do with Facebook, Inc."

14. At the time the Plaintiff purchased the domain names, there was no material traffic to the domain and no reason to expect a meaningful traffic flow.

15. The Plaintiff never tried to sell the domain names.

16. Upon information and belief, Facebook Inc, is the owner of trademark registrations for FB across various jurisdictions.

17. Upon information and belief, Facebook is an internet technology company. It owns a series of content platforms that enable people to connect with consuming and creating content through machine learning technology, including Facebook, Instagram, and Whatsapp.

18. On June 18, 2021, Facebook filed a complaint with the World Intellectual Property Organization (WIPO), thereby initiating an arbitration proceeding against Plaintiff in accordance with the Uniform Domain Name Dispute Resolution Policy ("UDRP"). The UDRP establishes a process for contesting domain name registrations using a system of private arbitrators. Each domain name registrant agrees to the UDRP

process when they register a domain name, and each person who files a complaint consents to the jurisdiction of the court in which the particular domain name registrar is located when the complaint is filed. The UDRP does not have an internal appeal process, instead relying on courts to review the decisions of panelist arbitrators. Once a panelist decision is rendered, the losing party has ten days to file a declaratory judgment action or the decision is implemented, in this case meaning the domain name would be transferred to Facebook.

19. WIPO accepted the Complaint and the registrar of the Domain Names locked the Domain Names, thereby prohibiting the Plaintiff from utilizing it.

20. On July 26, 2021, the Plaintiff filed his response to the UDRP complaint.

21. On August 25, 2021, the panelist rendered a decision requiring the transfer of the domain name to Facebook. The reasons stated in the ruling of the arbitrator represent a significant departure from the written standards contained in the UDRP, in that Facebook did not prove that (1) the Plaintiff did not have bona fide rights in the Domain Names or in terms included in the Domain Names (for purposes of the federal trademark laws that are applicable to the proceeding), (2) the Plaintiff had no legitimate interest in the domains, or (3) that the Plaintiff had registered and/or used the Domain Names in bad faith.

22. There are not any possibility of confusion between the Plaintiff's web site and the services offered by Facebook to the general public.

23. The Plaintiff's use of the Domain Names as his chosen domain names is a fair or otherwise lawful use of the term.

24. At no time did the Plaintiff trade upon or use Facebook's trademarks for his business of monetizing domain names.

25. At no time did the Plaintiff register or use the Domain Names in bad faith as defined by 15 U.S.C. §1125.

26. Because of Facebook's actions, the Plaintiff faces losing valuable rights in the Domain Names.

27. Due to the impending transfer of the Domain Names to Facebook by the WIPO Panel, the Plaitniff is now forced to bring this action to protect his rights in his intellectual property. The Plaintiff has had to incur substantial fees and costs to bring this suit.

28. Because WIPO has directed that the Domain Names be transferred to Facebook, this Court has jurisdiction under 15 U.S.C. §1114(2)(D)(v) to determine whether the Plaintiff's registration and use of fbdown.store, fbdown.website, fbdown.cc, fbdown.today, fbdown.company, fbdown.biz, fbdown.com, fbdown.net, fbdown.download, fbdown.tech, fbdown.ws, facebookvideoz.com, fbdown.pro, fbdown.asia, fbdown.tips, fbdown.work, fbdown.center, fbdown.news, fbdown.space, fbdown.mobi, fbdown.solutions, fbdown.ltd, fbdown.guru, fbdown.org, is unlawful under the ACPA and the Lanham Act.

29. Based on the facts set forth herein, an actual controversy has arisen and now exists between the Plaintiff and Facebook regarding whether or not the Plaintiff's use of the term FBDOWN as his domain name infringes Facebook's trademarks and/or constitutes trademark dilution and/or can serve as the basis for any relief under any Federal or state law.

30. The Plaintiff has never sold, transferred, or trafficked in the Domain Names.

31. At all times, the Plaintiff utilized the Domain Names in a bona fide manner for bona fide purposes. The Plaintiff does not refer to or use in any manner Facebook's trademarks. The Plaintiff's website has the disclaimer eliminated any possibility that the Plaintiff was attempting to infer an affiliation with the Defendant and its mark.

32. The Plaintiff has never had any intent to divert consumers from Facebook's online location to a site accessible under the Domain Names that could harm the goodwill represented by the mark.

33. The Plaintiff's use of the Domain Names has been lawful and has not infringed upon the mark of Facebook. The Plaintiff did not provide material and misleading false contact information when applying for the registration of the Domain Names. The Plaintiff did not fail to maintain accurate contact information with respect to the Domain Names or with respect to any other domain name.

34. The Plaintiff's use of fbdown.store, fbdown.website, fbdown.cc, fbdown.today, fbdown.company, fbdown.biz, fbdown.com, fbdown.net, fbdown.download, fbdown.tech, fbdown.ws, facebookvideoz.com, fbdown.pro, fbdown.asia, fbdown.tips, fbdown.work, fbdown.center, fbdown.news, fbdown.space, fbdown.mobi, fbdown.solutions, fbdown.ltd, fbdown.guru, fbdown.org, as his chosen domain name is a fair or otherwise lawful use of the term. Because of Facebook's actions and its claims of trademark infringement and dilution, the Plaintiff faces losing valuable rights in the Domain Names.

## FIRST CAUSE OF ACTION
### Declaratory Relief – 28 U.S.C. § 2201
### No Violation of Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)

35. The Plaintiff re-alleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

36. An actual controversy exists about whether the Plaintiff should be entitled to the domain names fbdown.store, fbdown.website, fbdown.cc, fbdown.today, fbdown.company, fbdown.biz, fbdown.com, fbdown.net, fbdown.download, fbdown.tech, fbdown.ws, facebookvideoz.com, fbdown.pro, fbdown.asia, fbdown.tips, fbdown.work, fbdown.center, fbdown.news, fbdown.space, fbdown.mobi, fbdown.solutions, fbdown.ltd, fbdown.guru, fbdown.org under the ACPA.

37. The ACPA provides a cause of action for a registrant whose domain names have been suspended, disabled, or transferred under which the registrant may sue for a declaration that the registrant is not in violation of the ACPA and for injunctive relief, including the reactivation of the domain name.

38. Under 15 U.S.C. §1114(2)(D)(v), a registrant who is threatened with the loss of his domain name under the UDRP has a cause of action to seek an injunction returning the domain name if the registrant can show that the registrant is in compliance with the ACPA.

39. The Plaintiff did not register the Domain Names with the bad-faith intent to profit from the goodwill of Facebook's trademark, as "bad faith" is defined in the ACPA.

40. The Plaintiff is entitled to have the unencumbered use of the Domain Names, to have the Domain Names reactivated, and to have all suspensions or transfers of the Domain Names terminated and prohibited.

41. As a direct and proximate result of Facebook's actions, the Plaintiff has been and will continue to be damaged through his inability to use the Domain Names.

42. Unless this Court issues a Declaratory Judgment that the Plaintiff is entitled to maintain registration of the Domain Names, the transfer of the Domain Names to Facebook will damage the Plaintiff irreparably. The Plaintiff has no adequate remedy at law.

43. Facebook's acts make this an exceptional case under 15 U.S.C. §1117(a) and the Plaintiff is thus entitled to an award of attorney's fees and costs.

## SECOND CAUSE OF ACTION
### Declaratory Relief – 28 U.S.C. § 2201
### No Violation of Lanham Act, 15 U.S.C. § 1114(a)

44. The Plaintiff re-alleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

45. An actual controversy exists about whether the Plaintiff should be entitled to the domain names fbdown.store, fbdown.website, fbdown.cc, fbdown.today, fbdown.company, fbdown.biz, fbdown.com, fbdown.net, fbdown.download, fbdown.tech, fbdown.ws, facebookvideoz.com, fbdown.pro, fbdown.asia, fbdown.tips, fbdown.work, fbdown.center, fbdown.news, fbdown.space, fbdown.mobi, fbdown.solutions, fbdown.ltd, fbdown.guru, fbdown.org under the Lanham Act.

46.     The Plaintiff's and Facebook's legal interests are adverse and create a present threat of litigation.

47.     The Plaintiff's use of the Domain Names is not likely to cause confusion or mistake, or deceive as to the affiliation, connection, or association of the Plaintiff with Facebook, or as to the origin, sponsorship, or approval by Facebook.

48.     Facebook's acts make this an exceptional case under 15 U.S.C. §1117(a) and the Plaintiff is thus entitled to an award of attorney's fees and costs.

### THIRD CAUSE OF ACTION
### Reverse Domain Name Hijacking, 15 U.S.C. § 1114(2)(D)(v)

49.     The Plaintiff re-alleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

50.     (1) registration of a domain name; (2) that has been "suspended, disabled, or transferred under a policy implemented by a registrar as described in 15 U.S.C. § 1114(2)(D)(ii)(II);" (3) "that the owner of the mark that prompted the domain name to be suspended, disabled, or transferred has notice of the action;" and (4) "that [the plaintiff's] registration or use of the domain name is not unlawful."

### REQUEST FOR RELIEF

Haythem Chihi respectfully requests the following relief:

1.     An order directing the Registrar GoDaddy, Inc. to take all action necessary to enable the Domain Names; to reactivate the Domain Names; to discontinue any suspension of the Domain Names; and to refrain from transferring the Domain Names from Chihi to Facebook;

2. A judgment declaring that Chihi's registration, use, and possession of the Domain Names neither infringes Facebook's trademarks nor dilutes the trademarks in any manner, nor constitutes a violation of any Federal or State law;

3. A judgment declaring that Chihi may continue to use and enjoy the Domain Names without interference of any type by the Facebook;

4. A judgment, order, or injunction enjoining Facebook from interfering with or challenging Chihi's registration, possession, or use of the Domain Names;

5. A judicial declaration that this is an exceptional case under the Lanham Act because Facebook initiated the UDRP with the bad-faith intent to use the legal system to steal the Domain Names from Chihi;

6. An award of Chihi's reasonable attorney's fees and costs incurred in bringing this action; and

7. Such other, further, and different relief as the Court may deem just and proper under the circumstances.

August 26, 2021

Haythem Chihi (pro se)

/s/ _____